No. _____

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

*In re Secretary Weida*,
Petitioner

U.S. District Court for the Northern District of Florida, No. 4:22-cv-325
(Hinkle, J.)

(Respondents: August Dekker; Brit Rothstein; Susan Doe, a minor, by and through her parents and next friends, Jane Doe and John Doe; and K.F., a minor, by and through his parent and next friend, Jade Laude)

## TIME-SENSITIVE PETITION FOR WRIT OF MANDAMUS

Mohammad O. Jazil
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 South Monroe Street, Suite 500
Tallahassee, FL 32301
(850) 274-1690

*Lead Counsel for Secretary Weida*

No. _____

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Per Rule 26.1 and Circuit Rule 26.1, Secretary Weida certifies that the following

have an interest in the outcome of this case:

1. Academic Pediatric Association, *Amicus*

2. Alstott, Anne, *Amicus*

3. Altman, Jennifer, *Counsel for Plaintiffs*

4. American Academy of Child and Adolescent Psychiatry, *Amicus*

5. American Academy of Family Physicians, *Amicus*

6. American Academy of Nursing, *Amicus*

7. American Academy of Pediatrics, *Amicus*

8. American College of Obstetricians and Gynecologists, *Amicus*

9. American College of Osteopathic Pediatricians, *Amicus*

10. American College of Physicians, *Amicus*

11. American Medical Association, *Amicus*

12. American Pediatric Society, *Amicus*

13. American Psychiatric Association, *Amicus*

14. Association of American Medical Colleges, *Amicus*

15. Bardos, Andy, *Counsel for Amicus*

16. Barnes, Brian, *Counsel for Amicus*

17. Beato, Michael, *Counsel for Defendants*

18. Boulware, Susan, *Amicus*

19. Bowdre, Alexander, *Counsel for Amicus*

20. Charles, Carl, *Counsel for Plaintiffs*

21. Chriss, Simone, *Counsel for Plaintiffs*

22. Clark, Kaila, *Counsel for Amicus*

23. Coursolle, Abigail, *Counsel for Plaintiffs*

No. _____

24.    Debriere, Katherine, *Counsel for Plaintiffs*

25.    Dekker, August, *Plaintiff*

26.    Do No Harm, *Amicus*

27.    Doe, Jane, *Plaintiff*

28.    Doe, John, *Plaintiff*

29.    Doe, Susan, *Plaintiff*

30.    Dunn, Chelsea, *Counsel for Plaintiffs*

31.    Endocrine Society, *Amicus*

32.    Figlio, Erik, *Counsel for Amicus*

33.    Florida Agency for Health Care Administration, *Defendant*

34.    Florida Chapter of the American Academy of Pediatrics, *Amicus*

35.    Gonzalez-Pagan, Omar, *Counsel for Plaintiffs*

36.    Hinkle, Robert, *U.S. District Court Judge*

37.    Hussein, Abdul-Latif, *Amicus*

38.    Isasi, William, *Counsel for Amicus*

39.    Jazil, Mohammad, *Counsel for Defendants*

40.    K.F., *Plaintiff*

41.    Kamody, Rebecca, *Amicus*

42.    Krasovec, Joseph, *Counsel for Amicus*

43.    Kuper, Laura, *Amicus*

44.    Lannin, Cortlin, *Counsel for Amicus*

45.    Laude, Jade, *Plaintiff*

46.    Little, Joseph, *Counsel for Plaintiffs*

47.    Marstiller, Simone, *Former Defendant*

48.    McKee, Catherine, *Counsel for Plaintiffs*

49.    McNamara, Meredithe, *Amicus*

50.    Miller, William, *Counsel for Plaintiffs*

No. _____

51.   National Association of Pediatric Nurse Practitioners, *Amicus*

52.   North Central Florida Council of Child and Adolescent Psychiatry, *Amicus*

53.   Olezeski, Christy, *Amicus*

54.   Pediatric Endocrine Society, *Amicus*

55.   Perko, Gary, *Counsel for Defendants*

56.   Pratt, Joshua, *Counsel for Defendants*

57.   Ramer, John, *Counsel for Amicus*

58.   Richards, Jay, *Amicus*

59.   Rivaux, Shani, *Counsel for Plaintiffs*

60.   Rothstein, Brit, *Plaintiff*

61.   Samuels, Valerie, *Counsel for Amicus*

62.   Shaw, Gary, *Counsel for Plaintiffs*

63.   Societies for Pediatric Urology, *Amicus*

64.   Society for Adolescent Health and Medicine, *Amicus*

65.   Society for Pediatric Research, *Amicus*

66.   Society of Pediatric Nurses, *Amicus*

67.   State of Alabama, *Amicus*

68.   State of Arkansas, *Amicus*

69.   State of Georgia, *Amicus*

70.   State of Indiana, *Amicus*

71.   State of Iowa, *Amicus*

72.   State of Kentucky, *Amicus*

73.   State of Louisiana, *Amicus*

74.   State of Mississippi, *Amicus*

75.   State of Missouri, *Amicus*

76.   State of Montana, *Amicus*

77.   State of Nebraska, *Amicus*

No. _____

78.    State of North Dakota, *Amicus*

79.    State of South Carolina, *Amicus*

80.    State of Tennessee, *Amicus*

81.    State of Texas, *Amicus*

82.    State of Utah, *Amicus*

83.    State of Virginia, *Amicus*

84.    Szilagyi, Nathalie, *Amicus*

85.    Thompson, David, *Counsel for Amicus*

86.    Veta, D. Jean, *Counsel for Amicus*

87.    Weida, Jason, *Defendant*

88.    World Professional Association for Transgender Health, *Amicus*

Per Circuit Rule 26.1-2(c), Secretary Weida certifies that the CIP contained herein

is complete.

Dated: April 10, 2023

 */s/ Mohammad O. Jazil*
Counsel for Secretary Weida

**TABLE OF CONTENTS**

Certificate of Interested Persons and Corporate Disclosure Statements ........C-1

Table of Contents ............................................................................................. i

Table of Authorities ...................................................................................... iii

Introduction & Relief Sought ........................................................................ 1

Issue Presented .............................................................................................. 2

Statements of Facts ........................................................................................ 2

Reasons for Granting the Writ ...................................................................... 7

I.  This Court Should Grant a Writ of Mandamus to Protect Secretary Weida from Testifying in a Deposition. ........................................... 7

   A. Mandamus is appropriate and there are no other adequate remedies available. ..................................................................................... 7

   B. The apex doctrine protects high-ranking government officials and can only be overcome after a showing of extraordinary circumstances and special need. .................................................................. 8

   C. The apex doctrine applies to Secretary Weida (and applied to Chief of Staff Weida and Assistant Deputy Secretary Weida)............................. 9

   D. Plaintiffs haven't carried their burden of establishing extraordinary circumstances and special needs................................................. 11

      1.  Plaintiffs seek non-essential information from Secretary Weida. ................................................................................................ 11

      2.  Plaintiffs haven't exhausted other means of seeking information. ................................................................................ 14

      3.  Plaintiffs fail to show that the Secretary is the only source of the information they seek or that his late deposition is justified. ............ 16

Conclusion ..............................................................................................17

Certificate of Compliance ......................................................................19

Certificate of Service ..............................................................................19

# TABLE OF AUTHORITIES

**Case Law**

*Bogan v. City of Boston,*
   489 F.3d 417 (1st Cir. 2007)....................................................................... 8

*Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta,*
   219 F.3d 1301 (11th Cir. 2000)............................................................. 13

*Coleman v. Schwarzenegger,*
   2008 WL 43300437 (E.D. Cal. Sept. 15, 2008) ............................................8, 10

*Garrido v. Dudek,*
   731 F.3d 1152 (11th Cir. 2013)....................................................... 12-13

*In re Cheney,*
   544 F.3d 311 (D.C. Cir. 2008) ................................................................. 8

*In re FDIC,*
   58 F.3d 1055 (5th Cir. 1995) .................................................................. 8

*In re Murphy,*
   No. 22-30697 (5th Cir. Jan. 5, 2023)....................................................... 8

*In re Secretary, Florida Department of Corrections,*
   2020 WL 1933170 (11th Cir. Mar. 2020) ............................................. 7

*In re Sulfuric Acid Antitrust Litigation,*
   231 F.R.D. 320 (N.D. Ill. 2005)........................................................... 17

*In re U.S. EPA Administrator,*
   624 F.3d 1368 (11th Cir. 2010)....................................................*passim*

*In re United States,*
   985 F.2d 510 (11th Cir. 1993)......................................................*passim*

*In re U.S. Department of Education,*
   25 F.4th 692 (9th Cir. 2022)........................................................*passim*

*K.G. v. Dudek,*
   864 F. Supp. 2d 1314 (S.D. Fla. 2012)............................................. 13

*Lederman v. N.Y.C. Department of Parks & Recreation,*
    731 F.3d 199 (2d Cir. 2013) .............................................................*passim*

*Lewis v. Casey,*
    518 U.S. 343 (1996) ........................................................................13

*Middlebrooks v. Equifax, Inc.,*
    2021 U.S. Dist. LEXIS 257512 (N.D. Ga. Dec. 14, 2021) ............................17

*National Mining Association v. U.S. Department of Interior,*
    251 F.3d 1007 (D.C. Cir. 2001) ..........................................................14

*Rush v. Parham,*
    625 F.2d 1150 (5th Cir. 1980) ........................................................*passim*

*United States v. Brown,*
    342 F.3d 1245 (11th Cir. 2003) ............................................................13

*United States v. Morgan,*
    313 U.S. 409 (1941) ........................................................................8

*Van Valin v. Gutierrez,*
    587 F. Supp. 2d 118 (D.D.C. 2008) ...................................................14

**Statutes**
28 U.S.C. § 1292 .....................................................................................7

Fla. Stat. § 20.42....................................................................................5

**Other Authorities**
Committee Meeting Notice, Fla. Sen. Health Policy,
    https://www.flsenate.gov/Committees/Show/HP/MeetingNotice/5845 .. 5

Florida Senate Bill 254 (2023),
    https://www.flsenate.gov/Session/Bill/2023/254..................................14

Florida House Bill 1421 (2023),
    https://www.flsenate.gov/Session/Bill/2023/1421.................................14

Jason C. Weida, Exec. Appointments, Fla. Sen.,
    https://www.flsenate.gov/Session/ExecutiveAppointments/Show/2023/6078
    .................................................................................................................. 5

## INTRODUCTION & RELIEF SOUGHT

The district court ordered the head of a state agency to sit for a deposition during Florida's 60-day legislative session in a case concerning the lawfulness of one of his agency's rules. Doc.118. Such a deposition would interfere with Secretary Weida's general stewardship of the Florida Agency for Health Care Administration ("AHCA"); his oversight over its 1,500 employees; his management of its budget, the largest in state government; and his advocacy for its legislative agenda, which includes procuring next year's budget and securing his own confirmation by the Florida Senate. Doc.115-4.

There's no special need for this deposition, either. The district court has said that the "controlling" "question" in the underlying case is the reasonableness of the State's determination that certain treatments for one medical diagnosis are "experimental." Doc.64 at 4-5 (citing *Rush v. Parham*, 625 F.2d 1150 (5th Cir. 1980)). Only "current medical opinion" can resolve that question, *Rush*, 625 F.2d at 1157 n.13, not Secretary Weida's interrogation. Regardless, Plaintiffs have failed to exhaust all available means to obtain the process-specific information they seek. Nor can they justify their decision to serve a deposition notice two days before the end of extended fact discovery when their alleged need is based on evidence obtained months ago. Doc.115-1.

The apex doctrine shields the Secretary from the sought-after deposition. As this Court has done before, it should grant mandamus relief that requires the district court to issue an order protecting the agency head. Secretary Weida asks for a ruling **on or before April 21, 2023**, which is the court-imposed deadline for a deposition.

1

## ISSUE PRESENTED

Whether the district court erred in compelling a state agency head to sit for a deposition, when that would (1) interfere with his duties; (2) occur during the regular session of the Florida Legislature; and (3) seek non-essential information (a) that could have been obtained through other means and (b) when the basis for seeking that non-essential information had been in Plaintiffs' hands for months.

## STATEMENT OF FACTS

**A.** AHCA promulgated a rule that excludes Medicaid reimbursements for certain treatments for a psychiatric condition called gender dysphoria. Doc.49 at 4. The excluded treatments are puberty blockers, cross-sex hormones, and gender reassignment surgeries. *Id.* The agency supported its rule through a generally accepted professional medical standards determination or GAPMS Report. *Id.* at 4-7. The GAPMS Report surveyed studies and expert analysis before concluding that the excluded treatments are experimental and, as a result, shouldn't be reimbursed under Medicaid. *Id.*

The state rulemaking process subjected the GAPMS Report to further testing. This included the submission (and consideration) of written comments, the submission (and consideration) of oral comments at a public hearing, and the possibility of a de novo rule challenge before an impartial administrative law judge (though no such Florida-APA challenge materialized). *Id.* at 7-10.

AHCA's rule went into effect August 21, 2022. *Id.* at 10. The next month, Plaintiffs sued AHCA and then-AHCA Secretary Marstiller, alleging several constitutional

2

and statutory causes of action. Doc.1. Plaintiffs moved for a preliminary injunction, Doc.11, which the district court denied, Doc.64. In denying the motion, the district court framed the case narrowly. Relying on *Rush v. Parham*, the court stated that the controlling question in this case is whether, based on current medical opinion, the State's determination—that the excluded treatments are experimental—is reasonable. Doc.64 at 4. The district court explained that this *Rush*-based review is "at least tentatively," "not an administrative review of what the State knew at the time" about current medical opinion. Doc.120-11 at 16-17.

**B.** The parties thereafter discussed case scheduling. Plaintiffs proposed a truncated timeline with fact discovery ending in January, and a trial beginning April 24. Doc.66 at 2-3. The district court generally agreed and set an "aggressive schedule" with the fact-discovery cutoff in February 2023, and trial beginning May 9, 2023. Doc.67.

On January 6, 2023, the State produced thousands of pdf documents (mostly emails) to Plaintiffs, dating from January 2022 to September 2022, which shed light on the GAPMS Report and the rulemaking process. Following a motion-to-compel hearing, the State produced more pdf documents on January 30, notably, documents and communications between AHCA employees and outside consultants who assisted with the GAPMS process. Doc.86.

Plaintiffs also deposed three AHCA employees: Jeffrey English; Ann Dalton, the Bureau Chief of Medicaid Policy; and Matt Brackett, author of the GAPMS Report and the agency's 30(b)(6) witness. Doc.115 at 3. Plaintiffs deposed Mr. English on January

3

23, Ms. Dalton on January 24, and Mr. Brackett on February 8 and March 8. *Id.* Plaintiffs also deposed AHCA's expert witnesses, some of whom served as consultants during the GAPMS process.

Plaintiffs floated other potential deponents as well, including AHCA General Counsel Andrew Sheeran, AHCA Pharmacist Nai Chen, AHCA Pharmacist Ashley Peterson, and even outside counsel. *Id.* at 3-5; Doc.115-2; Doc.115-3. Absent from this list is AHCA Program Director Devona Pickles, who, along with Mr. Sheeran, actively participated in the GAPMS and rulemaking processes. They, along with Secretary Weida, were aware of different aspects of the processes, including the selection and assistance of outside consultants. *E.g.*, Doc.117-6; 117-9; 117-10; 117-11; 117-12; 117-14; 117-15; 117-17.

To avoid apex-doctrine issues (and issues associated with deposing an attorney for Mr. Sheeran), the parties had agreed that Plaintiffs would provide written questions only to which Mr. Sheeran would respond. Doc.115-2. No written questions were provided, and no other fact depositions—including fact depositions of outside counsel—happened. Doc.115 at 3-5.

With the February 2023 fact-discovery deadline approaching, the agency experienced technical issues with additional document collection and production. That deadline was thus extended until March 10, 2023. Doc.107. At 5:21pm on March 8, Plaintiffs served on Secretary Weida a notice for a deposition on March 10. Doc.115-1.

Plaintiffs had not exhausted their interrogatories in this case at the time they served a deposition notice on the Secretary. They had six interrogatories remaining before the close of fact discovery.

**C.** For his part, Jason Weida currently leads AHCA. Doc.115-4 ¶ 3. He became the permanent Secretary in January 2023. *Id.* Before that, he was the Interim Secretary. *Id.* Before that, starting in September 2022, he served as the Chief of Staff to then-Secretary Marstiller. *Id.* ¶ 7. And before that, he was the Assistant Deputy Secretary for Medicaid Policy and Medicaid Quality, a senior-level position in the agency. *Id.* ¶ 6.

Secretary Weida's schedule is demanding. *Id.* ¶ 13. He oversees over 1,500 employees, and the largest budget of any state agency. *Id.* ¶ 4. He's particularly busy now that the Florida Legislature is in session and debating laws concerning agency priorities (including the agency's budget for the next fiscal year). *Id.* ¶ 13. Under Florida law, as a new agency head, the Florida Senate must also confirm Secretary Weida. Fla. Stat. § 20.42(2). The confirmation process includes the Secretary's appearance before two separate legislative committees in as many weeks.[1]

**D.** On March 15, the State moved the district court for a protective order to prevent Secretary Weida from being deposed. Doc.115. The State relied on the apex

---

[1] Jason C. Weida, Exec. Appointments, Fla. Sen., https://www.flsenate.gov/Session/ExecutiveAppointments/Show/2023/6078 (last visited Apr. 10, 2023); *see also* Committee Meeting Notice, Fla. Sen. Health Policy, https://www.flsenate.gov/Committees/Show/HP/MeetingNotice/5845 (last visited Apr. 10, 2023) (setting an April 13 public hearing).

doctrine and separately explained that Plaintiffs failed to comply with Federal Rule of Civil Procedure 30(b)'s reasonable notice requirement. *Id.*

Plaintiffs responded two weeks later. Doc.117. They argued that Secretary Weida had unique information, "most importantly" about outside consultants who assisted with the GAPMS process. *Id.* at 7-10. These consultants included Dr. Van Mol, Dr. Grossman, Dr. Van Meter, Dr. Donovan, Dr. Brignardello-Petersen, and Dr. Cantor. To support their contentions, Plaintiffs referenced emails between Secretary Weida, the outside consultants, and other AHCA employees to demonstrate Secretary Weida's unique knowledge about the outside consultants and about the rulemaking process. *E.g.*, Doc.117-5–117-12, 117-14–117-20. Of these outside consultants, Plaintiffs have already deposed Drs. Van Meter and Donovan. They chose not to depose the others.

The district court denied Secretary Weida's motion for protective order on April 4, 2023. Doc.118. Among other things, the court said:

> [T]he process by which this rule was adopted—including whether the required public hearing was just a charade to support a predetermined result—is relevant. Whether the consultants who appeared in support of the rule were hired not for their expertise but for their predetermined viewpoint is relevant. Whether the experts who will testify for the defense at trial were coached by Mr. Weida is relevant.

*Id.* at 2. This petition for a writ of mandamus follows.

## REASONS FOR GRANTING THE WRIT

I.    **This Court Should Grant a Writ of Mandamus to Protect Secretary Weida from Testifying in a Deposition.**

A.    **Mandamus is appropriate and there are no other adequate remedies available.**

Though "mandamus is an extraordinary remedy," this Court has used it to shield the FDA commissioner from being forced to testify at trial, *In re United States*, 985 F.2d 510, 511 (11th Cir. 1993), and the EPA Administrator from having to answer a district court's questions. *In re U.S. EPA Administrator*, 624 F.3d 1368, 1375 (11th Cir. 2010). In both instances, this Court emphasized that high-ranking government officials shouldn't have to first place themselves in contempt to perfect an appeal because this would undermine public perception of government institutions; mandamus was appropriate. *Id.* at 1372 (quoting *In re United States*, 985 F.2d at 512). So too here. Secretary Weida doesn't have any other available remedies. After all, he can't appeal the district court's discovery order. 28 U.S.C. § 1292. But the apex doctrine clearly protects him and his office, as will be explained below, and the district court clearly erred in holding otherwise. *See In re Sec'y, Fla. Dep't of Corr.*, 2020 WL 1933170, at *4 (11th Cir. Mar. 2020) ("For a writ of mandamus to issue, three conditions must be met: first, the party seeking the writ must have no other adequate means of relief; second, the petitioner must demonstrate his or her right to the writ is clear and indisputable; and third, the issuing court must determine whether a writ is appropriate under the circumstances.").

**B.    The apex doctrine protects high-ranking government officials and can only be overcome after a showing of extraordinary circumstances and special need.**

The apex doctrine protects high-ranking governmental officials from being deposed, absent extraordinary circumstances or a special need. *See United States v. Morgan*, 313 U.S. 409, 422 (1941). It's well established that the doctrine applies to agency heads, chiefs of staff, and other senior-level officials. *E.g., In re U.S. Dep't of Educ.*, 25 F.4th 692, 706 (9th Cir. 2022) (barring deposition of the former Secretary of Education); *Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013) (affirming order barring deposition of the New York City Mayor and the former Deputy Mayor); *In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008) (barring depositions of the Chief of Staff to the Vice President); *Bogan v. City of Boston*, 489 F.3d 417, 424 (1st Cir. 2007) (affirming order barring deposition of the Boston Mayor); *In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995) (barring deposition of FDIC directors); *In re Murphy*, No. 22-30697 (5th Cir. Jan. 5, 2023) (staying press secretary's deposition); *Coleman v. Schwarzenegger*, 2008 WL 43300437, at *4 (E.D. Cal. Sept. 15, 2008) (barring deposition of Chief of Staff of California Governor).

The doctrine's existence is "obvious": "[h]igh ranking government officials have greater duties and time constraints than other witnesses." *In re United States*, 985 F.2d at 512. Their "time is very valuable." *Id.* If high-ranking officials must "testify in every case," then their "time would be monopolized by preparing and testifying in such cases." *Id.*

Accordingly, a deposition-seeking party must establish extraordinary circumstances and a special need, based on record evidence, to overcome the doctrine's protections. To do so, that party (1) must identify, with particularity, the information they need from the official, which must be "essential" to their lawsuit, *In re U.S. Dep't of Educ.*, 25 F.4th at 703; *Lederman*, 731 F.3d at 203, and (2) must proffer evidence that the official has first-hand knowledge of this information. *In re U.S. EPA Administrator*, 624 F.3d at 1372-73; *Lederman*, 731 F.3d at 203. Under Eleventh Circuit precedent, (3) evidence of alternative witnesses bars discovery from high-ranking officials. *See id.*; *In re United States*, 985 F.2d at 512-13.

### C. The apex doctrine clearly applies to Secretary Weida (and applied to then-Chief of Staff Weida and then-Assistant Deputy Secretary Weida).

The apex doctrine clearly applies to Secretary Weida. As agency head, he sits at the apex of AHCA. In that role, his schedule is demanding, especially with the legislature in session through May 5, 2023. The Secretary's confirmation process alone includes two appearances before separate legislative committees in the next two weeks. Adding a deposition (with the attendant preparation time) would take away from his important work. That's crucial for apex-doctrine purposes because the doctrine is predicated on the high-ranking official's *current* inability to sit for depositions. *In re United*

*States*, 985 F.2d at 512. That Secretary Weida held other roles at the time AHCA promulgated its rule is irrelevant for purposes of the apex doctrine.

Even if Secretary Weida's then-roles matter for purposes of the analysis, the apex doctrine still protects him. That's because all senior-level officials at the apex of a governmental agency are protected. And it's unrebutted that the Chief of Staff and Assistant Deputy Secretary positions are senior-level positions in AHCA. Doc.115-4 ¶¶ 6-7. Then-Chief of Staff Weida or Assistant Deputy Secretary Weida's being "two levels removed from the Agency's Secretary" shouldn't have mattered to the district court. Doc.118 at 2; *see also Coleman*, 2008 WL 43300437, at *26-29. The doctrine applies—and applied—to him.

Contrary to binding Eleventh Circuit case law—which focuses on the here and now—Plaintiffs directed the district court to two non-binding cases from Texas. Doc.117 at 4 (citing *Rotstain v. Trustmark Nat'l Bank*, 2020 WL 12968651, at *6 (N.D. Tex. March 10, 2020); *Simon v. Birdwell*, 950 S.W.2d 439 (Tex. App. 1997)). Plaintiffs relied below on those cases for the proposition that the apex doctrine can only be invoked when the deponent has been noticed for deposition *because* of his position. *Id.* The cases include an illustrative example: "if the president of a Fortune 500 corporation personally witnesses a fatal car accident, he cannot avoid a deposition sought in connection with a resulting wrongful death action because of his 'apex' status." *Id.*

Plaintiffs' proposition and out-of-circuit cases aren't persuasive. Again, this circuit recognizes that the apex doctrine is predicated on executive officials' *current* inability

10

to sit for depositions. *In re United States*, 985 F.2d at 512. As for the Fortune 500 president example, Secretary Weida didn't witness a car accident; he's being asked to put aside his *current* executive duties for the time it takes to prepare for and participate in a deposition concerning his past work as a high-level executive-branch official. *Id.*

### D. The district court erred in allowing a deposition without first requiring Plaintiffs to carry their burden of establishing extraordinary circumstances and special needs.

Because the doctrine applies, this Court "must review the record to determine whether it supports a finding of extraordinary circumstances or special need for compelling" Secretary Weida's appearance at a deposition. *In re U.S. EPA Administrator*, 624 F.3d at 1372. It doesn't. Extraordinary circumstances or special need exist only if Plaintiffs can show that they seek information essential to their claims, that only Secretary Weida possesses, and for which Plaintiffs have exhausted all other sources of discovery. *Id.* at 1377; *In re U.S. Dep't of Educ.*, 25 F.4th at 703; *Lederman*, 731 F.3d at 203. There's been no such showing here.

#### 1. *Plaintiffs seek non-essential information from Secretary Weida.*

**a.** The information Plaintiffs seek from Secretary Weida is *non*essential information. As the district court has framed the case, so goes the *Rush* Medicaid claim, so goes the case. Doc.64 at 6 ("In short, the case is likely to rise or fall on the [*Rush*] Medicaid claim."). The district court repeated this understanding at every juncture. *E.g.*, *id.* (preliminary-injunction order); Doc.105 at 3 (third-party-discovery order). And the only essential information relevant under *Rush* is "current medical opinion." *Rush*, 625

11

F.2d at 1157 n.13. The state of current medical opinion will come in the form of expert testimony supporting and opposing AHCA's determination. Secretary Weida can't offer such expertise.

The Secretary's sought-after testimony would be neither essential nor relevant. At best, the information Plaintiffs seek from the Secretary concerns how outside consultants were hired and used during the GAPMS process. Doc.117 at 7. At worst, it's general information about the GAPMS process and the rulemaking process. Neither concerns "whether, based on current medical knowledge, the state's determination that [the excluded] treatments are experimental is reasonable." Doc.64 at 4-5.

**b.** More recently, however, in a dispute between a third-party and Plaintiffs, where AHCA didn't participate, the district court suggested an openness to moving *Rush*'s goalposts. Doc.105 at 3-4. Relying on *Garrido v. Dudek*, 731 F.3d 1152 (11th Cir. 2013), the district court said, under *Rush*, the court can assess medical reasonableness by looking to see whether the *process* used to hire consultants was arbitrary or capricious.

Yet *Garrido* neither cited nor mentioned *Rush*. The parties in *Garrido* expressly declined to raise the issue of whether the district court properly applied an APA-like arbitrary and capricious test:

> At the outset we note that Defendant Dudek *does not challenge either Plaintiffs' entitlement to* [*the at-issue*] *treatment as a covered Medicaid service* or that section of the permanent injunction invalidating the Handbook Rule excluding [the] treatment from Medicaid coverage. Rather, Dudek appeals the scope of the permanent injunction and declaratory judgment, contending that both go beyond what was necessary to afford Plaintiffs complete relief.

731 F.3d at 1158 (emphasis added); *see also K.G. v. Dudek*, 864 F. Supp. 2d 1314, 1321 (S.D. Fla. 2012). *Garrido*'s silence, "the existence of unaddressed issues," "has no precedential effect." *Lewis v. Casey*, 518 U.S. 343, 352 n.2 (1996).

Under the prior-panel rule, the three-judge panel in *Garrido* couldn't overrule *Rush*'s current-medical-opinion test. *See United States v. Brown*, 342 F.3d 1245, 1246 (11th Cir. 2003). And, to be sure, *Garrido*'s purported holding would have overruled *Rush*.

*Rush* is a pragmatic opinion that acknowledges the State's role in shaping health, safety, and welfare policy, 625 F.2d at 1154, and focuses judicial review on the decision reached, not the process used to reach it. *Id.* at 1157 n.13. Review is limited to assessing "current medical opinion." *Id.* A less-than-perfect process, supported by "current medical opinion," would be "reasonable," regardless of the process used to get there. *Id.*

Not so under *Garrido*'s purported holding. As the district court now suggests, a less-than-perfect process that reached a reasonable decision, supported by current medical opinion, would still fall short of the mark.

**c.** Even if the Secretary has essential information (which he doesn't) that goes to the controlling issue in this case (which it doesn't), the district court's process-driven rationale for allowing a deposition will likely become moot in the next few weeks. A "superseding statute or regulation moots a case only to the extent that it removes challenged features of the prior law." *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1310 (11th Cir. 2000) (cleaned up). And "any new regulation would be based on a new administrative record, and the administrative record currently

13

before the Court would be inapposite in any [process] challenge to a new rule promulgated by new rulemaking." *Van Valin v. Gutierrez*, 587 F. Supp. 2d 118, 121 (D.D.C. 2008); *see Nat'l Mining Ass'n v. U.S. Dep't of Interior*, 251 F.3d 1007, 1010-11 (D.C. Cir. 2001) (revision of agency rules moots a due-process challenge to the "old set of rules").

The Florida Legislature is now poised to bar any reimbursements for the excluded treatments—the same result as the rule being challenged. *See* H.B. 1421 (2023); S.B. 254 (2023).[2] The medical reasonableness of this legislative decision may still remain a justiciable issue for the courts to decide under *Rush*. Not so for the process-driven inquiry because the process at issue would now be that of the Florida Legislature (and not AHCA ). Thus, should either of these bills be signed into law (which is extremely likely), testimony from *any* AHCA employee—whether it be the Secretary or Assistant Deputy Secretary—would be irrelevant and nonessential even under *Garrido*'s purported holding.  "

> 2.    *Plaintiffs haven't exhausted other means of seeking information.*

Separately, Plaintiffs have failed to exhaust all other means to obtain their sought-after information. Plaintiffs could have (but didn't) depose or seek discovery from other AHCA employees. Doc.115 at 3-5. These employees included Cody Farrill (AHCA's then-Chief of Staff), Tom Wallace (an AHCA Deputy Secretary), and Nai

---

[2]    S.B. 254's progress is available at: https://www.flsenate.gov/Session/Bill/2023/254. To see H.B. 1421's progress, please see: https://www.flsenate.gov/Session/Bill/2023/1421.

Chen (an AHCA Pharmacist who assisted in the rulemaking process). *Id.* As explained above, they could have also sought to depose Devona Pickle, an AHCA Program Director. All of them have information about the GAPMS process, about the rulemaking process, and about the outside consultants. *Id.* To be sure, the apex doctrine would apply to some of these employees. But as with the deposition of Ann Dalton (the AHCA Bureau Chief of Medicaid Policy), AHCA may not have invoked the doctrine. None of these employees are, after all, the sitting AHCA Secretary.

And if Plaintiffs were concerned about how the outside experts were hired, whether they're truly experts, or whether they were coached to provide certain opinions, then Plaintiffs could have deposed each of the GAPMS-related experts themselves. Though Plaintiffs did issue third-party subpoenas to each expert associated with the GAPMS process, they deposed only Drs. Van Meter and Donovan.

Plaintiffs had still more means of discovery available to them. For example, Plaintiffs sought to depose AHCA's General Counsel, Mr. Sheeran, who also interacted with consultants used during the GAPMS process. *Id.* at 4; Doc.115-2. AHCA expressed concern over an attorney being deposed but agreed to have Plaintiffs submit written questions to Mr. Sheeran. Doc.115 at 4; Doc.115-2. Plaintiffs didn't submit any questions, underscoring that they could have, but failed to, exhaust *all* means of obtaining their sought-after information. With the unused interrogatories, they could also have asked more specific written questions. They didn't. *See In re U.S. Dep't of Educ.*, 25 F.4th

15

at 704 (holding that "Plaintiffs did not exhaust their alternatives here" because, in part, "they did not use all of their interrogatories").

> 3.    *Plaintiffs fail to show that the Secretary is the only source of the information they seek or that his late deposition is justified.*

As the previous section makes clear, Secretary Weida doesn't have unique knowledge about the GAPMS process, the rulemaking process, or the selections of and interactions with outside consultants. Several other AHCA employees or the consulting experts themselves could have shed light on those topics. Plaintiffs' own evidence demonstrates this. In their response in opposition to Secretary Weida's motion for protective order, Plaintiffs attached and referenced several emails to show that Secretary Weida has unique knowledge about the outside experts. Contrary to Plaintiffs' intentions, the emails show that several others were in the loop. Doc.117-6 (Andrew Sheeran, Trey Collins); 117-9 (Devona Pickle, Matt Brackett, Nai Chen, Mr. Sheeran); 117-10 (Mr. Sheeran); 117-11 (Ms. Pickle, Mr. Brackett, Mr. Chen, Mr. Sheeran); 117-12 (Ms. Pickle, Mr. Brackett, Mr. Chen, Mr. Sheeran); 117-14 (Mr. Sheeran); 117-15 (Ms. Pickle, Mr. Brackett, Mr. Chen, Mr. Sheeran); 117-17 (Ms. Pickle); 117-19 (Ashley Peterson, Ms. Dalton); 117-20 (Ms. Peterson); 117-21 (Ms. Peterson, Ms. Dalton).

The district court also stated that these emails were produced to Plaintiffs late, which justified a late deposition. Doc.118 at 4. That's not quite right. Many of the referenced emails were produced (in pdf form) in January 2023. Plaintiffs thus can't use AHCA's tardiness as justification for a March 8 notice for a March 10 deposition.

Plaintiffs' late notice remains unreasonable. *See, e.g.*, *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 320, 327-28 (N.D. Ill. 2005) (ten days' notice for a deposition near the discovery deadline was unreasonable); *Middlebrooks v. Equifax, Inc.*, 2021 U.S. Dist. LEXIS 257512, at *1 (N.D. Ga. Dec. 14, 2021) (four days' notice for a deposition on the last day of an extended discovery period was unreasonable).

Plaintiffs' notice is even more unreasonable, considering that they were aware of Secretary Weida's involvement in the rulemaking process as early as July 8, 2022. *See* Doc.115-4 ¶ 9 (noting that Secretary Weida was a panelist during the July 8 rulemaking hearing); Doc.84-1 at 3-4 (noting that Plaintiffs' counsel were present at that hearing and threatened to sue the State if it promulgated its rule). Still they waited until the very end of extended fact discovery to try to depose Secretary Weida on non-essential issues.

## CONCLUSION

For the reasons expressed above, Secretary Weida asks this Court to grant him mandamus relief **on or before April 21**. Plaintiffs' top-down approach to gathering *non*essential information runs up against the apex doctrine's bottom-up approach to climbing the apex for essential information only. Sanctioning such an approach would invite litigants to take their *policy* disputes with high-ranking government officials into a deposition room. This is especially inappropriate when the information sought is less than essential, and Plaintiffs chose not to submit questions to AHCA's General Counsel, depose other AHCA employees, or use all of their interrogatories.

Respectfully submitted,

*/s/ Mohammad O. Jazil*
Mohammad O. Jazil
Gary V. Perko
Michael Beato
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 South Monroe Street, Suite 500
Tallahassee, FL 32301
(850) 274-1690 / (540) 341-8809 (fax)
mjazil@holtzmanvogel.com
gperko@holtzmanvogel.com
mbeato@holtzmanvogel.com

*Counsel for Secretary Weida*

## CERTIFICATE OF COMPLIANCE

This petition complies with Federal Rule of Appellate Procedure 21(d)(1), in that the petition contains 4,253 words. This petition also complies with Rule 32(a)(5)-(6) because it's prepared in a proportionally spaced face using Microsoft Word 2016 in 14-point Garamond font.

Dated: April 10, 2023                                    */s/ Mohammad O. Jazil*

## CERTIFICATE OF SERVICE

I certify that a copy of this petition was filed in the district court docket and was served on Plaintiffs' counsel. This petition was served on the following:

Pillsbury Winthrop Shaw
Pittman, LLP

Jennifer Altman
Shani Rivaux
600 Brickell Avenue, Suite 3100
Miami, FL 33131
jennifer.altman@pillsbury.com
shani.rivaux@pillsbury.com
(786) 913-4900

William C. Miller
Gary J. Shaw
Pillsbury Winthrop Shaw
Pittman, LLP
1200 17th Street N.W.
Washington, D.C. 20036
william.c.miller@pillsburylaw.com
gary.shaw@pillsburylaw.com
(202) 663-8000

Joe Little
500 Capitol Mall, Suite 1800
Sacramento, CA 95814
joe.little@pillsburylaw.com
(916) 329-4700

National Health Law Program

Abigail Coursolle
3701 Wilshire Boulevard, Suite 315
Los Angeles, CA 90010
coursolle@healthlaw.org
(310) 736-1652

Catherine McKee
1512 E. Franklin Street, Suite 110
Chapel Hill, NC 27514
mckee@healthlaw.org

Lambda Legal Defense
and Education Fund, Inc.

Omar Gonzalez-Pagan
120 Wall Street, 19th Floor
New York, NY 10005
ogonzalez-pagan@lambdalegal.org
(212) 809-8585

Carl S. Charles
1 West Court Square, Suite 105
Decatur, GA 30030
ccharles@lambdalegal.org
(404) 897-1880

Southern Legal Counsel, Inc.

Simone Chriss
Chelsea Dunn
1229 NW 12th Avenue
Gainesville, FL 32601
Simone.Chriss@southernlegal.org
Chelsea.Dunn@southernlegal.org
(352) 271-8890

Florida Health Justice Project

Katy DeBriere
3900 Richmond Street
Jacksonville, FL 32205
debriere@floridahealthjustice.org
(352) 278-6059

Dated: April 10, 2023                                  _/s/ Mohammad O. Jazil_____